GUIDRY, Judge.
Plaintiff brings this action seeking to recover money allegedly due him under an employment contract he had with defendant. Defendant answered plaintiff’s petition admitting the existence of the contract, denying however that he owed the plaintiff any money. Defendant reconvened against plaintiff seeking damages in the amount of $2,200.00. The trial court rendered judgment in favor of the plaintiff in the sum of $932.99 and dismissed defendant’s reconven-tional demand. Defendant, Marcantel appeals.
The undisputed facts show that plaintiff, who had been a carpenter for nearly 17 years was hired by defendant to help build his residence. At the time plaintiff was hired it was agreed by the parties that plaintiff would receive $6.00 per hour plus, upon satisfactory completion of the house, a commission of 3% of the cost of the material used on the house.[1]
According to the contract plaintiff in addition to performing carpentry work, was to supervise the construction of the house. He was to work along with three other carpenters. The other carpenters were also to be paid hourly wages by the defendant. Likewise defendant was to pay the electrical and plumbing workers. Other workers hired by defendant were to install kitchen cabinets and floor covering. Defendant purchased all materials used by the carpenters, plumbers and electricians.
At the request of defendant, an architectural draftsman, Gary Reed, prepared a set of blue prints for defendant’s new residence. Thereafter, plaintiff, who was not involved in the drafting of these plans, was furnished a copy of the blueprints and commenced work according to the specifications set forth therein. Defendant admitted that he merely turned the plans over to plaintiff and spent very little time going over them with him.
Plaintiff testified that he commenced work by putting up batter boards which designated the area in which to lay the residence’s concrete slab foundation. Plaintiff in so doing used the plan figures which represented the total outer dimensions of the house. The figures showed the house to have a length, both front and back of 95 feet 3 inches. Subsequently, the foundation *1389 was laid and plaintiff began framing the rooms according to the more specific room dimensions set out in the plans. It soon became apparent that there was a problem. As plaintiff framed the rooms from east to west it was eventually noticed that the back room on the west side was about two feet short of its prescribed dimensions. Plaintiff testified that before he started framing the rooms he had no idea that something might be wrong. Plaintiff stated that as a carpenter he usually does not scale the plans to check the correctness of the dimensions.
Following discovery of the problem defendant was called in to examine the situation. Defendant unequivocally testified that there was a mistake in the plans. Defendant, after his review of the situation decided to extend the slab another two feet.
Plaintiff testified that it would have been possible to use the room as is but that defendant’s wife did not want this since it would have made the room too small. In accordance with defendant’s decision the slab was extended another two feet. The extension required that a portion of the existing foundation be broken, as well as, requiring dismantling some of the framework. It was stipulated at trial that the cost of repair of this problem was $1,000.00. Plaintiff in reconvention seeks recovery of this sum.
Plaintiff offered the testimony of Jerome Buller, who qualified as an expert in the field of residential construction. Jerome Buller’s examination of the blueprints confirmed the fact that they were in error. As aforestated the plans showed a squared residence which had an outer dimension of 95 feet 3 inches in length. However, particular room dimensions across the back of the house totaled out to 96 feet 8V2 inches and total room dimensions across the front summed up to 96 feet V2 inches.
Plaintiff testified that the two foot extension ordered by the defendant took care of the problem.
Completion of the house took 12 weeks, and plaintiff stated that no other major problems were experienced. He did, however, testify that he had had a misunderstanding with defendant’s wife concerning some rollers on a closet drawer and the installation of some unpainted crown molding. Defendant’s wife did not testify at the trial of this matter.
Plaintiff admitted that the house was not completely finished when he left the site but that he only had to install the floor molding and in order to do that was waiting for other workers hired by defendant to lay the carpet. He stated that he informed plaintiff to call him when the carpets were laid and he would return to install the molding. This testimony was corroborated by Yves Soileau, one of the other carpenters, who testified that the defendant’s residence was substantially complete when plaintiff left the job site. Plaintiff testified that he never received a call from the defendant to return.
Defendant, who visited the house site everyday, admitted that there was only one day of work left when plaintiff left. Defendant testified that he hired his father to complete this work. The testimony shows that defendant’s father was also at the job site everyday.
In rendering judgment for plaintiff on the main demand and rejecting defendant’s reconventional demand the trial court found that the only error in construction occurred as a result of the dimensional error contained in the plans for which plaintiff was not responsible. On appeal appellant contends that the trial court erred in failing to find that the error in construction complained of was unrelated to the architectural plans.
The only error in construction was the pouring of the slab initially two feet too short. There is no doubt but that this occurred when the slab was laid out by plaintiff in accordance with the architectural plans furnished by defendant. The trial court found, and we agree, that plaintiff, as head carpenter, was under no obligation prior to laying out of the slab to check all of the interior dimensions of each room to satisfy himself that the internal dimensions *1390 of each room when added together would coincide with the overall dimension set forth on the plans. Mr. Buller, who was accepted by the trial court as an expert in the field of residential construction, testified with positivity that a head carpenter is not' expected to check out details of blueprints to assure that an error has not been made by the draftsman.
We agree with the trial court that the only error in construction occurred, not by reason of plaintiff’s unworkmanlike performance but rather because of the drafting error contained in the plans furnished to plaintiff. Further, we agree with the trial court that plaintiff supervised the construction of defendant’s residence until it was satisfactorily complete and accordingly he is entitled to recover his 3% commission.
For the above and foregoing reasons the judgment appealed from is affirmed. All costs to be borne by the defendant-appellant.
AFFIRMED.

. It was stipulated at the time of trial that this amount was $932.99.